UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

UNITED STATES OF AMERICA )
)
VS. ) CR06-0089S
)
NATHANIEL ANDRADE )

---

SUPPLEMENTAL SENTENCING MEMORANDUM

Nathaniel Andrade has pled guilty to possessing cocaine base for distribution. The government has filed a notice of prior conviction, pursuant to 21 U.S.C. § 851, which raised the applicable mandatory minimum sentence from 5 to 10 years of incarceration and the advisory guideline range from 188-235 months to 262-327 months of incarceration. The sentencing of Mr. Andrade presents two significant issues for this Court to consider. First, what is the impact of the § 851 filing and how should the Court weigh that event in its sentencing determination. Second, how does the Court consider the difference between the sentencing treatment of cocaine base versus cocaine powder. After considering all the necessary factors under 18 U.S.C. § 3553(a), the Court should conclude that the facts of Mr. Andrade's case and circumstances do not justify a guideline sentence.

I. Disparate Impact of § 851 Filing

The filing of the § 851 notice in this case does not effect the actual culpability of Mr. Andrade at all. The filing does not change his criminal conduct, nor does it change the fact of his prior convictions. All the filing accomplished was the rise of his minimum sentence from 5 to 10 years, and the increase in the bottom end of his guideline range from 188 months to 262 months.

The First Circuit Court of Appeals has suggested that while the advisory guideline range is not per se reasonable, any variance from that range requires an explanation from the sentencing judge. *United States v. Jimenez-Beltre*, 440 F.3d 514, 518 (1st Cir. 2006). Further, the greater the variance the more substantial the explanation necessary. *United States v. Thurston*, 456 F.3d 211, 215 (1st Cir. 2006), *United States v. Smith*, 445 F.3d 1, 4 (1st Cir. 2006). While that logic could make sense in certain circumstances, in the case of a § 851 filing with a career offender designation,

like here, it cannot not. Filing the § 851 notice under these circumstances transfers sentencing power from the Court to the US Attorney. The US Attorney has full discretion to file the notice, but the ultimate effect is that the government changes the sentencing calculus without changing any facts in consideration under 18 U.S.C. § 3553(a).[1] This Court cannot be manipulated by the government's unilateral decisions to file an § 851 notice.

The Court is also in receipt of information from the Probation Department detailing the actual disparity between sentences with and without § 851 notices. *See* Analysis of 851 Information Cases (attached). The average sentence when an § 851 notice was filed is 60 months longer than when withheld. Additionally, whether intended by the government or not, the analysis shows a disparate impact on minority defendants in particular.[2] When the basis for filing notice of a prior conviction, or not, lies in sheer discretion of the government, and not based on any mitigating or aggravating facts, the Court must conclude that the enhanced sentence creates an unwarranted disparity under 18 U.S.C. § 3553(a)(6) and sentence the defendant accordingly.

## II. Crack / Powder Disparity

### A. Disparity a Real Consideration

The 100:1 powder/crack sentencing disparity continues to be a completely unjustified portion of the Federal sentencing structure. The United States Sentencing Commission has issued three reports to Congress detailing the lack of justification for the harsh 100:1 treatment of cocaine base over cocaine powder. Report to Congress: Cocaine and Federal Sentencing Policy (May 2002) ("2002 Report"); Special Report to Congress: Cocaine and Federal Sentencing Policy (April 1997) ("1997 Report"); Special report to Congress: Cocaine and Federal Sentencing Policy (February 1995) ("1995 Report"). All three Commission reports "unanimously and firmly concluded that the

---

[1] Although the advisory guideline range under consideration in 18 U.S.C. § 3553(a)(5) changes with the filing of the § 851 notice, the facts of the offense, the defendant and his record, and the purposes of sentencing do not change at all. The sentencing judge is aware of the defendant's criminal record whether or not the notice is filed.

[2] Crack cases where the government withheld the § 851 notice: approximately, 40% African-American, 40% Hispanic, 20% White. Crack cases with an § 851 notice: approximately, 50% African-American, 20% Hispanic, 20% White.§ 851 notice

various Congressional objectives can be achieved more effectively by decreasing substantially the 100 to 1 drug quantity ratio." 2002 Report at viii. *See also* 1995 Report at xvi; 1997 Report at 2-3. After thorough study of sentencing in crack cocaine prosecutions the Commission determined that the original bases for the heightened penalties - that is the presumption of violence, higher addiction rates, greater availability, and more deleterious health effects - did not pan out. *See generally* 2002 Report. In fact, the Commission determined early on that it had only considered the quantity of cocaine when establishing the guideline, and failed to look at a number of important other offense and offender characteristics. Those other factors include the geographic range of the defendant's geographic range of a defendant's illegal activity, the profit to be reaped by a defendant, the defendant's role as a retail street dealer rather than a wholesale distributor, the lack of violence associated with the offense, the absence of a weapon, the flattening and inversion of penalties versus cocaine suppliers (dealers of large quantities of powder cocaine), the absence of juveniles in the offense, and the lack of psychopharmacologically induced crime. 1995 Report at 168-175, 193-197. Ultimately, in 1995 and subsequently, the Commission found no difference between the physiological effects of crack versus powder, and also that an unwarranted disparity existed because: 1) between 85% and 90% of crack defendant's are African American; 2) street level dealers regularly receive longer sentences than their more culpable suppliers; and 3) the value of the cocaine involved varied disparately compared to the penalty imposed. *Id.* at 173. Despite the Commission's well supported view, Congress has failed to act.

Since *United States v. Booker*, 543 U.S. 220 (2005), however, this Court has been free from the sentencing guidelines to exercise its discretion in individual cases. This discretion particularly extends to the consideration of the nature of a controlled substance and the severity of the suggested guideline range in drug trafficking cases. *United States v. Pho*, 433 F.3d 53, 64-65 (1st Cir. 2006). Other circuit courts of appeals have also supported the consideration of the powder versus crack cocaine disparity for sentencing purposes; most recently the D.C. Court of Appeals recently held it was error not to consider the disparity when determining the sentence. *United States v. Pickett*, 2007 U.S. App. LEXIS 3272, 25-27 (D.C. Cir., February 13, 2007).[3] Likewise, this Court has supported

---

[3] No circuit court of appeals has appeals held it improper to consider the nature of the contraband at sentencing. *United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006); *see also, United States v. Spears*, 2006 U.S. App. LEXIS 29741, *23-24 (8th Cir. December 5, 2006); *United States v. Castillo*, 460 F.3d 337, 361 (2d Cir. 2006); *United States v. Jointer*, 457 F.3d

the consideration of the sentencing disparity in sentencing crack offenses. *United States v. Perry*, 389 F. Supp. 2d 278, 304 (D.R.I. 2005) ("when a guidelines sentence involves a nearly impossible-to-justify disparity such as this, the sentence neither reflects the seriousness of the offense, nor promotes general respect for the criminal justice system"). In order to comply with 18 U.S.C. § 3553(a), the Court must consider the unjustified 100:1 powder to crack cocaine penalty disparity.

B. Disparity Unconstitutional

The 100:1 powder to crack sentencing disparity is unconstitutional. Congress proposed, imposed, and has maintained the disparity on bases, including protection of the African American community, which represent both benign and purposeful discrimination.

In 1995 the Commission proposed a correction to the 100:1 penalty ratio. The proposal abolished the disparity while creating enhancements for certain aggravating offense characteristics. Congress rejected the proposal, but recognized the gross disparity in the treatment of crack and powder cocaine offenses. Federal Sentencing Guidelines Amendment Disapproval Act, Pub. L. No. 104-38, 109 Stat. 334 (1995) (§ 2(a)(2) directing the Commission to revise the penalty ratio consistent with 18 U.S.C. 3553(a)). The rejection of the proposal centered on a discussion of the effect of crack cocaine trafficking in the African American community. The Commission's report detailed the unwarranted impact of harsh crack sentences on African American defendants. Congress, in debate of the Disapproval Act, upheld the disparity citing the purpose of protecting African Americans from the crack trade.[4]

The Supreme Court has held that the use of race as a basis for government action is subject to strict scrutiny; the government must be pursuing a compelling state interest and the method must be narrowly drawn. *See Shaw v. Hunt*, 517 U.S. 899, 907-08 (1996). In that case the Court struck

---

682, 687 (7th Cir. 2006); *United States v. Eura*, 440 F.3d 625, 634 (4th Cir. 2006); *and United States v. Williams*, 435 F.3d 1350, 1355 (11th Cir. 2006).

In *Gunter*, while agreeing with the First Circuit Court's declaration of error in categorically rejecting the 100:1 guideline ratio (462 F.3d at 247), the court found error in the belief that the sentencing court had no discretion to consider the crack/cocaine powder disparity in its § 3553(a) analysis. 462 F.3d at 249.

[4] Not necessarily an unique view, the D.C. Circuit Court also claimed that the harsh treatment of crack traffickers helped protect the African American community. *See United States v. Thompson*, 27 F.3d 671, 678 n, 3 (D.C. Cir. 1994).

down a gerry-mandered voting district designed to create an African American majority in an attempt to increase the probability of electing minority, African American, officials. Clearly if the benign discrimination designed to increase minority representation in government cannot pass strict scrutiny, then the rationalization for harsh treatment of crack offenses as protecting African Americans must also fail the test. Criminalizing crack cocaine trafficking is a compelling state interest, but the current penalty disparity remains unfocused to address the harms. The Commission has attempted to more narrowly tailor the disparity between crack and powder cocaine through proposals in its reports to Congress in 1995, 1997, and 2002. It has proposed equal treatment for different types of cocaine, a 5:1 ratio, and a 20:1 ratio, and also proposed sentencing enhancements for aggravating factors including the use of violence and the employment of minors. *See generally,* 2002 Report, 1997 Report, 1995 Report. Congress, however, has completely failed to act on these proposals to more narrowly tailor the sentencing policy to address the actual harms.

The 100:1 powder to crack cocaine sentencing disparity also presents unconstitutional purposeful discrimination. Congress's rejection of the Commission's 1995 proposal occurred with the knowledge that 85% to 90% of crack defendants were African American. *See* 1995 Report at 156.[5] The Commission has now issued three reports throughly discrediting the purported rationales for the crack/powder disparity. The only Congressional action has been to disapprove the Commission's original proposed amendment, and otherwise to do nothing. Congress has reaffirmed the disparity in the sentencing almost entirely for racial reasons.

While the Supreme Court has made "unceasing efforts to eradicate racial prejudice from our criminal justice system," *Johnson v. California*, 543 U.S. 499, 512 (2005), Congress, unfortunately, in passing the Disapproval Act, has not followed suit with respect to crack cocaine offenses. Because Congress, knowing the disparate racial impact and lack of policy bases to justify the penalty differential, "reaffirmed ... at least in part" the enhanced penalties for crack cocaine because of its adverse impact on African-Americans, *United States v. Johnson*, 40 F.3d, 436, 439 (D.C.Cir. 1994), the existing penalty scheme is invalid on equal protection and due process grounds.

---

[5] The trend continues; in fiscal year 2006 African Americans accounted for 81% of crack defendants. 2006 United States Sentencing Commission Statistic Sourcebook, Table 34 (attached).

## III. Conclusion

This Court should not sentence Mr. Andrade to a guideline sentence in this matter. The filing of an § 851 notice in this case has perverted the guideline calculation creating an unwarranted disparity under 18 U.S.C. § 3553(a) which does not at all reflect Mr. Andrade's culpability. The Court must also consider the 100:1 powder to crack cocaine disparity when determining this sentence. The United States Sentencing Commission has completely refuted the bases for the imposition of these heightened penalties, and the heightened penalties cannot be justified here in Mr. Andrade's individual case. Further, the 100:1 disparity is likely unconstitutional based on Congress's use of the disparity to protect the African American community; that basis does not pass strict scrutiny. When considering all of the relevant information in Mr. Andrade's case, including those mitigating factors submitted to the Court previously, this Court should conclude that 120 months incarceration complies with the purposes of sentencing delineated in 18 U.S.C. § 3553(a).

Respectfully submitted
Nathaniel Andrade
By his attorney,

/s/ Kevin J. Fitzgerald, 5775
Assistant Federal Defender
10 Weybosset St., Ste. 300
Providence, RI 02903
(401) 528-4281
FAX 528-4285
kevin_fitzgerald@fd.org

CERTIFICATION

I hereby certify that a copy of this motion was hand-delivered to Kristin Mattias, United States Probation Officer, and Mary Rogers, Assistant United States Attorney, on March 16, 2007.

/s/ Kevin J. Fitzgerald, 5775