# AMENDMENTS TO THE SENTENCING GUIDELINES

Pursuant to section 994(p) of title 28, United States Code, the United States Sentencing Commission hereby submits to the Congress the following amendments to the sentencing guidelines and the reasons therefor. As authorized by such section, the Commission specifies an effective date of November 1, 2007, for these amendments.

## Amendments to the Sentencing Guidelines, Policy Statements, and Official Commentary

1. Compassionate Release

Amendment: The Commentary to §1B1.13 captioned "Application Notes" is amended in Note 1 by striking subdivision (A) and inserting the following:

"(A) Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the following circumstances:

(i) The defendant is suffering from a terminal illness.

(ii) The defendant is suffering from a permanent physical or medical condition, or is experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and for which conventional treatment promises no substantial improvement.

(iii) The death or incapacitation of the defendant's only family member capable of caring for the defendant's minor child or minor children.

(iv) As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (i), (ii), and (iii).".

The Commentary to §1B1.13 is amended by striking "Background" and all that follows through the end of "statute." and inserting the following:

"Background: This policy statement implements 28 U.S.C. § 994(t).".

Reason for Amendment: This amendment modifies the policy statement at §1B1.13 (Reduction in Term of Imprisonment as a Result of Motion by Director of Bureau of Prisons) to further effectuate the directive in 28 U.S.C. § 994(t). Section 994(t) provides that the Commission "in promulgating general policy statements regarding the sentence

methamphetamine on a premises where a minor is present or resides presents a greater harm than discharging a hazardous substance into the environment, but is a lesser harm than the substantial risk of harm to adults or to the environment created by the manufacture of methamphetamine. Therefore, the amendment adds a new tier to the enhancement in the new subdivision (b)(10)(B) in order to account for this conduct. A defendant convicted under 21 U.S.C. § 860a for distributing, or possessing with the intent to distribute, methamphetamine on a premises where a minor is present or resides will receive a two-level enhancement, with a minimum offense level of 14.

To address the overlap of conduct covered by the enhancement for the substantial risk of harm to the life of a minor and the new offense of manufacturing, or possessing with the intent to manufacture, methamphetamine on a premises where a minor is present or resides, a three-level enhancement and a minimum offense level of level 27 will apply in a case in which a minor is present, but in which the offense did not create a substantial risk of harm to the life of a minor. In any methamphetamine manufacturing offense which creates a substantial risk of harm to the life of a minor, a six-level enhancement and a minimum offense level of level 30 will apply.

Sixth, the amendment updates Appendix A (Statutory Index) to include references to the new offenses created by the PATRIOT Reauthorization and Adam Walsh Acts.

9. Cocaine Base Sentencing

Amendment: Section 2D1.1(c)(1) is amended by striking "1.5 KG or more of Cocaine Base" and inserting "4.5 KG or more of Cocaine Base".

Section 2D1.1(c)(2) is amended by striking "At least 500 G but less than 1.5 KG of Cocaine Base" and inserting "At least 1.5 KG but less than 4.5 KG of Cocaine Base".

Section 2D1.1(c)(3) is amended by striking "At least 150 G but less than 500 G of Cocaine Base" and inserting "At least 500 G but less than 1.5 KG of Cocaine Base".

Section 2D1.1(c)(4) is amended by striking "At least 50 G but less than 150 G of Cocaine Base" and inserting "At least 150 G but less than 500 G of Cocaine Base".

Section 2D1.1(c)(5) is amended by striking "At least 35 G but less than 50 G of Cocaine Base" and inserting "At least 50 G but less than 150 G of Cocaine Base".

Section 2D1.1(c)(6) is amended by striking "At least 20 G but less than 35 G of Cocaine Base" and inserting "At least 35 G but less than 50 G of Cocaine Base".

Section 2D1.1(c)(7) is amended by striking "At least 5 G but less than 20 G of Cocaine Base" and inserting "At least 20 G but less than 35 G of Cocaine Base".

Section 2D1.1(c)(8) is amended by striking "At least 4 G but less than 5 G of Cocaine Base" and inserting "At least 5 G but less than 20 G of Cocaine Base".

Section 2D1.1(c)(9) is amended by striking "At least 3 G but less than 4 G of Cocaine Base" and inserting "At least 4 G but less than 5 G of Cocaine Base".

Section 2D1.1(c)(10) is amended by striking "At least 2 G but less than 3 G of Cocaine Base" and inserting "At least 3 G but less than 4 G of Cocaine Base".

Section 2D1.1(c)(11) is amended by striking "At least 1 G but less than 2 G of Cocaine Base" and inserting "At least 2 G but less than 3 G of Cocaine Base".

Section 2D1.1(c)(12) is amended by striking "At least 500 MG but less than 1 G of Cocaine Base" and inserting "At least 1 G but less than 2 G of Cocaine Base".

Section 2D1.1(c)(13) is amended by striking "At least 250 MG but less than 500 MG of Cocaine Base" and inserting "At least 500 MG but less than 1 G of Cocaine Base".

Section 2D1.1(c)(14) is amended by striking "Less than 250 MG of Cocaine Base" and inserting "Less than 500 MG of Cocaine Base".

The Commentary to §2D1.1 captioned "Application Notes" is amended in Note 10 in the first paragraph by inserting before "The Commission has used the sentences" the following :

"Use of Drug Equivalency Tables.—

(A) Controlled Substances Not Referenced in Drug Quantity Table.—";

by striking "(A)" before "Use" and inserting "(i)"; by striking "(B)" before "Find" and inserting "(ii)"; and by striking "(C)" before "Use" and inserting "(iii)";

in the second paragraph by striking "The Drug Equivalency Tables also provide" and inserting the following:

"(B) Combining Differing Controlled Substances (Except Cocaine Base).—The Drug Equivalency Tables also provide";

and by adding at the end the following:

"To determine a single offense level in a case involving cocaine base and other controlled substances, see subdivision (D) of this note.".

The Commentary to §2D1.1 captioned "Application Notes" is amended in Note 10 in the

subdivision captioned "Examples:" by striking "Examples:" and inserting the following:

"(C) Examples for Combining Differing Controlled Substances (Except Cocaine Base).—";

and by redesignating examples "a." through "d." as examples (i) through (iv), respectively.

The Commentary to §2D1.1 captioned "Application Notes" is amended in Note 10 by inserting after example (iv), as redesignated by this amendment, the following:

"(D) Determining Base Offense Level in Offenses Involving Cocaine Base and Other Controlled Substances.—

(i) In General.—If the offense involves cocaine base ('crack') and one or more other controlled substance, determine the base offense level as follows:

(I) Determine the combined base offense level for the other controlled substance or controlled substances as provided in subdivision (B) of this note.

(II) Use the combined base offense level determined under subdivision (B) of this note to obtain the appropriate marihuana equivalency for the cocaine base involved in the offense using the following table:

| Base Offense Level | Marihuana Equivalency |
|---|---|
| 38 | 6.7 kg of marihuana |
| 36 | 6.7 kg of marihuana |
| 34 | 6 kg of marihuana |
| 32 | 6.7 kg of marihuana |
| 30 | 14 kg of marihuana |
| 28 | 11.4 kg of marihuana |
| 26 | 5 kg of marihuana |
| 24 | 16 kg of marihuana |
| 22 | 15 kg of marihuana |
| 20 | 13.3 kg of marihuana |
| 18 | 10 kg of marihuana |
| 16 | 10 kg of marihuana |
| 14 | 10 kg of marihuana |
| 12 | 10 kg of marihuana. |

(III) Using the marihuana equivalency obtained from the table in subdivision (II), convert the quantity of cocaine base involved in the offense to its equivalent quantity of marihuana.

(IV) Add the quantity of marihuana determined under subdivisions (i) and (III), and look up the total in the Drug Quantity Table to obtain the combined base offense level for all the controlled substances involved in the offense.

(ii) Example.—The case involves 1.5 kg of cocaine, 10 kg of marihuana, and 20 g of cocaine base. Pursuant to subdivision (B), the equivalent quantity of marihuana for the cocaine and the marihuana is 310 kg. (The cocaine converts to an equivalent of 300 kg of marihuana (1.5 kg x 200 g = 300 kg), which when added to the quantity of marihuana involved in the offense, results in an equivalent quantity of 310 kg of marihuana.) This corresponds to a base offense level 26. Pursuant to the table in subdivision (II), the base offense level of 26 results in a marihuana equivalency of 5 kg for the cocaine base. Using this marihuana equivalency for the cocaine base results in a marihuana equivalency of 100 kg (20 g x 5 kg = 100 kg). Adding the quantities of marihuana of all three controlled substances results in a combined quantity of 410 kg of marihuana, which corresponds to a combined base offense level of 28 in the Drug Quantity Table.".

The Commentary to §2D1.1 captioned "Application Notes" is amended in Note 10 by striking "DRUG EQUIVALENCY TABLES" and inserting the following:

"(E) Drug Equivalency Tables.—";

and in the subdivision captioned "Cocaine and Other Schedule I and II Stimulants (and their immediate precursors)" by striking "1 gm of Cocaine Base ('Crack') = 20 kg of marihuana".

Reason for Amendment: The Commission identified as a policy priority for the amendment cycle ending May 1, 2007, "continuation of its work with the congressional, executive, and judicial branches of the government and other interested parties on cocaine sentencing policy," including reevaluating the Commission's 2002 report to Congress, Cocaine and Federal Sentencing Policy. As a result of the Anti-Drug Abuse Act of 1986, Pub. L. 99–570, 21 U.S.C. § 841(b)(1) requires a five-year mandatory minimum penalty for a first-time trafficking offense involving 5 grams or more of crack cocaine, or 500 grams of powder cocaine, and a ten-year mandatory minimum penalty for a first-time trafficking offense involving 50 grams or more of crack cocaine, or 5,000 grams or more of powder cocaine. Because 100 times more powder cocaine than crack cocaine is required to trigger the same mandatory minimum penalty, this penalty

structure is commonly referred to as the "100-to-1 drug quantity ratio."

To assist the Commission in its consideration of Federal cocaine sentencing policy, the Commission received statements and heard expert testimony from the Executive Branch, the Federal judiciary, defense practitioners, state and local law enforcement representatives, medical and treatment experts, academicians, social scientists, and interested community representatives at hearings on November 14, 2006, and March 20, 2007. The Commission also received substantial written public comment on Federal cocaine sentencing policy throughout the amendment cycle.

During the amendment cycle, the Commission updated its analysis of key sentencing data about cocaine offenses and offenders; reviewed recent scientific literature regarding cocaine use, effects, dependency, prenatal effects, and prevalence; researched trends in cocaine trafficking patterns, price, and use; surveyed the state laws regarding cocaine penalties; and monitored case law developments.

Current data and information continue to support the Commission's consistently held position that the 100-to-1 drug quantity ratio significantly undermines various congressional objectives set forth in the Sentencing Reform Act and elsewhere. These findings will be more thoroughly explained in a forthcoming report that will present to Congress, on or before May 15, 2007, a number of recommendations for modifications to the statutory penalties for crack cocaine offenses. It is the Commission's firm desire that this report will facilitate prompt congressional action addressing the 100-to-1 drug quantity ratio.

The Commission's recommendation and strong desire for prompt legislative action notwithstanding, the problems associated with the 100-to-1 drug quantity ratio are so urgent and compelling that this amendment is promulgated as an interim measure to alleviate some of those problems. The Commission has concluded that the manner in which the Drug Quantity Table in §2D1.1 (Unlawful Manufacturing, Importing, Exporting, or Trafficking (Including Possession with Intent to Commit These Offenses); Attempt or Conspiracy)) was constructed to incorporate the statutory mandatory minimum penalties for crack cocaine offenses is an area in which the Federal sentencing guidelines contribute to the problems associated with the 100-to-1 drug quantity ratio.

When Congress passed the 1986 Act, the Commission responded by generally incorporating the statutory mandatory minimum sentences into the guidelines and extrapolating upward and downward to set guideline sentencing ranges for all drug quantities. The drug quantity thresholds in the Drug Quantity Table are set so as to provide base offense levels corresponding to guideline ranges that are above the statutory mandatory minimum penalties. Accordingly, offenses involving 5 grams or more of crack cocaine were assigned a base offense level (level 26) corresponding to a sentencing guideline range of 63 to 78 months for a defendant in Criminal History Category I (a guideline range that exceeds the five-year statutory minimum for such offenses by at least

three months). Similarly, offenses involving 50 grams or more of crack cocaine were assigned a base offense level (level 32) corresponding to a sentencing guideline range of 121 to 151 months for a defendant in Criminal History Category I (a guideline range that exceeds the ten-year statutory minimum for such offenses by at least one month). Crack cocaine offenses for quantities above and below the mandatory minimum threshold quantities were set accordingly using the 100-to-1 drug quantity ratio.

This amendment modifies the drug quantity thresholds in the Drug Quantity Table so as to assign, for crack cocaine offenses, base offense levels corresponding to guideline ranges that include the statutory mandatory minimum penalties. Accordingly, pursuant to the amendment, 5 grams of cocaine base are assigned a base offense level of 24 (51 to 63 months at Criminal History Category I, which includes the five-year (60 month) statutory minimum for such offenses), and 50 grams of cocaine base are assigned a base offense level of 30 (97 to 121 months at Criminal History Category I, which includes the ten-year (120 month) statutory minimum for such offenses). Crack cocaine offenses for quantities above and below the mandatory minimum threshold quantities similarly are adjusted downward by two levels. The amendment also includes a mechanism to determine a combined base offense level in an offense involving crack cocaine and other controlled substances.

The Commission's prison impact model predicts that, assuming no change in the existing statutory mandatory minimum penalties, this modification to the Drug Quantity Table will affect 69.7 percent of crack cocaine offenses sentenced under §2D1.1 and will result in a reduction in the estimated average sentence of all crack cocaine offenses from 121 months to 106 months, based on an analysis of cases sentenced in fiscal year 2006 under §2D1.1 involving crack cocaine.

Having concluded once again that the 100-to-1 drug quantity ratio should be modified, the Commission recognizes that establishing federal cocaine sentencing policy ultimately is Congress's prerogative. Accordingly, the Commission tailored the amendment to fit within the existing statutory penalty scheme by assigning base offense levels that provide guideline ranges that include the statutory mandatory minimum penalties for crack cocaine offenses. The Commission, however, views the amendment only as an interim solution to some of the problems associated with the 100-to-1 drug quantity ratio. It is neither a permanent nor a complete solution to those problems. Any comprehensive solution to the 100-to-1 drug quantity ratio requires appropriate legislative action by Congress.

10. Technical Amendments

Amendment: Section 2D1.11(a) is amended by striking "(e)" after "under subsection" and inserting "(d)".

The Commentary to §2K2.1 captioned "Application Notes" is amended in Note 14 in